USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/30/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

JASON OWEN HAMILTON,

        Petitioner,

       - against -

CHRISTOPHER SHANAHAN, FIELD OFFICE DIRECTOR; DEPORTATION OFFICER RAMOS; DEPORTATION OFFICER PORTALES; DEPORTATION OFFICER MEDINA; DEPORTATION OFFICER BOYD; DEPORTATION OFFICER KEMP; DEPORTATION OFFICER MCCONNEL; DEPORTATION OFFICER GALINDO; DEPORTATION OFFICER RODRIGUEZ; DEPORTATION OFFICER ATTANASIO; DEPORTATION OFFICER SHINAS; JANET NAPOLITANO, UNITED STATES SECRETARY OF HOMELAND SECURITY; ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

        Respondents.

------------------------------------------------------- X

OPINION AND ORDER

09 Civ. 6869 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

1

## I. INTRODUCTION

On August 4, 2009, Jason Owen Hamilton filed this *pro se* petition for a writ of habeas corpus ("Petition") pursuant to section 2241 of title 28 of the United States Code. On August 4, 2009, Hamilton also filed what he calls a "Motion for Damages Including Injunctive and Declaratory Relief, Temporary Restraining Order and Attorney's [sic] Fee[s] and Costs Under the Equal Access to Justice Act" ("Motion for Damages").[1] In both his Petition and Motion for Damages, Hamilton challenges his detention at the Varick Federal Detention Facility in New York by the United States Bureau of Immigration and Customs Enforcement ("ICE"), a division within the Department of Homeland Security ("DHS"). He requests that the Court enjoin his further detention, grant him $100,000 in damages, and award him reasonable attorneys' fees. Respondents, Christopher Shanahan, Field Office Director; Deportation Officers Ramos, Portales, Medina, Boyd, Kemp, McConnel, Galindo, and Shinas; Janet Napolitano, Secretary of Homeland Security of the United States; and Eric H. Holder, Jr., Attorney General of the United States (collectively, the "Government"), oppose Hamilton's Petition. For the reasons discussed below, Hamilton's Petition and

---

[1] Because the arguments in Hamilton's Motion for Damages are also raised in his Petition, Hamilton's Motion for Damages will be considered along with his Petition.

Motion for Damages are denied.

## II. BACKGROUND

Hamilton is a citizen of Trinidad & Tobago.[2] Hamilton came to the United States on March 31, 1999.[3] On August 6, 1999, Hamilton married Shelly Scope-Hamilton, a United States citizen.[4] On October 6, 1999, Hamilton left the United States and returned to Trinidad.[5] Hamilton reentered the United States on or about October 10, 1999 as "a nonimmigrant visitor for pleasure with authorization to remain in the United States for a temporary period not to exceed April 9, 2000."[6] Hamilton has not left the United States since October 10, 1999.[7]

### A. Hamilton's Green Card Application

On or about October 14, 2004, Scope-Hamilton filed a green card

---

[2] *See* Petition for a Writ of Habeas Corpus, For Injunctive and Declaratory Relief (With Temporary Restraining Order) ("Petition") at 5.

[3] *See id.*

[4] *See id.*

[5] *See id.*

[6] DHS Notice to Appear, Ex. 1 to the Government's Letter Brief in Opposition to the Petition ("Opp. Mem.").

[7] *See* Petition at 6.

3

petition naming Hamilton as the beneficiary.[8] Through their attorney, Joan Foy, Scope-Hamilton filed United States Citizenship and Immigration Services ("USCIS") Form I-130, Petition for Alien Relative ("I-130"), and Hamilton filed USCIS Form I-485, Application to Register Permanent Residence or Adjust Status ("I-485").[9] On December 2, 2004, USCIS sent Foy a Receipt Notice confirming its receipt of Scope-Hamilton's I-130.[10] Hamilton alleges that neither he, Scope-Hamilton, nor Foy received a Receipt Notice confirming USCIS's receipt of Hamilton's I-485 or a notice that USCIS scheduled Hamilton for an adjustment of status interview.[11] USCIS's records indicate that it sent a notice informing Hamilton that his adjustment of status interview was scheduled for March 29, 2005.[12]

---

[8] *See id.*

[9] *See* 10/20/04 Letter from the Immigrant Services Center of Caribbean Women's Health Association, Inc. to Immigration and Naturalization Service's Adjustment of Status Unit, Ex. B to Petition.

[10] *See* 12/2/04 USCIS 1-797C Notice of Action, Ex. C to Petition.

[11] *See* Petition at 6; 10/14/05 Letter from the Immigrant Services Center of Caribbean Women's Health Association, Inc. to USCIS, Ex. E to Petition (stating that to date only a Receipt Notice for the Form I-130 had been received and enclosing Hamilton's affidavit stating that he had not received any documents from USCIS other than the Receipt Notice for the Form I-130).

[12] *See* 1/28/05 USCIS Letter to Hamilton, Ex. D to Petition (notifying Hamilton that an appointment was made with the District Adjudications Officer

4

USCIS denied Hamilton and Scope-Hamilton's I-130 and I-148 petitions because they failed to attend the scheduled adjustment of status interview.[13] Hamilton claims that neither he, Scope-Hamilton, nor Foy received the Denial Notice and therefore he was unable to appeal the denial to the Board of Immigration Appeals ("BIA") within the required thirty days.[14]

In 2006, Hamilton and Scope-Hamilton began having marital trouble and separated.[15] In 2008, Hamilton filed USCIS Form I-360, Petition for Amerasian, Widow(er) or Special Immigrant ("I-360"), alleging that he was an abused spouse.[16]

### B. Hamilton's Detention by DHS

On December 22, 2008, ICE commenced removal proceedings against Hamilton by issuing a Notice to Appear.[17] ICE took Hamilton into custody

---

regardings Hamilton's adjustment of status application).

[13]  *See* Petition at 7.

[14]  *See id.*

[15]  *See id.* at 8.

[16]  *See id.*; 4/14/08 USCIS I-797C Notice of Action, Ex. K to Petition.

[17]  *See* DHS Notice to Appear, Ex. 1 to Opp. Mem.

5

on April 8, 2009.[18] Hamilton requested that an Immigration Judge ("IJ") review ICE's determination that he should remain in custody during his removal proceedings.[19] The bond hearing took place on April 27, 2009.[20] During the bond hearing, Hamilton gave the IJ a copy of the Receipt Notice for his I-360 petition and requested to be released either on a bond or on his own recognizance.[21] Hamilton alleges that the Government never informed the IJ that USCIS failed to send Hamilton a Receipt Notice for the I-485, a notice that USCIS had scheduled an adjustment of status interview, or a Denial Notice when USCIS denied his I-130 and I-485 applications (collectively, the "USCIS Notices").[22]

On May 11, 2009, the IJ issued a memorandum explaining his custody decision.[23] The IJ concluded that Hamilton (1) "showed minimal actual ties to relatives legally in the U.S."; (2) failed to show "lawful activities, support of himself or others, etc."; (3) "previously failed to appear at an important

---

[18] *See* Notice of Custody Determination, Ex. A to Opp. Mem.

[19] *See* 5/11/09 Immigration Judge Memorandum Explaining Custody Decision ("IJ Decision"), Ex. B to Opp. Mem.

[20] *See* Petition at 9.

[21] *See id.*

[22] *See id.*

[23] *See* IJ Decision.

6

immigration interview"; (4) "has apparently done nothing to resolve his immigration problems" for over two years; (5) has an "unclear" criminal record that "must be considered a negative"; and (6) "fail[ed] to show any form of relief for which he might qualify, except the chance for voluntary departure."[24] Accordingly, the IJ found Hamilton to be "an extremely poor appearance risk with strong motivation to avoid immigration enforcement" and denied Hamilton's request for release "as a matter of discretion."[25]

Hamilton appealed the IJ's decision to the BIA.[26] On appeal, Hamilton argued that "DHS committed fraud by failing to notify him of an interview scheduled in relation to his 2004 application to adjust status based on his marriage to his wife and of the subsequent denial of that application as a result of his and his wife's failure to attend."[27] The BIA dismissed Hamilton's appeal on July 17, 2009, concluding that "even if [Hamilton's] failure to attend his DHS interview is not considered a negative factor, . . . the record does not contain sufficient evidence of the respondent's ties to the United States such that he has

---

[24] *Id.*

[25] *Id.*

[26] *See* 7/17/09 BIA Decision, Ex. C to Opp. Mem.

[27] *Id.*

7

met his burden of showing that he is likely to appear for his future proceedings before the [IJ]."[28] Hamilton did not appeal the BIA's decision.

## III. APPLICABLE LAW

### A. Petition for a Writ of Habeas Corpus

Section 2241 of title 28 of the United States Code authorizes a district court to issue a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." Habeas corpus proceedings are available as a forum for statutory and constitutional challenges to the detention of aliens who have been ordered removed.[29] However, "'federal jurisdiction over [28 U.S.C.] § 2241 [habeas] petitions is properly limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations by the IJ and the BIA.'"[30]

### B. Detention of an Alien Pending a Decision on Whether to Remove the Alien

Under section 1226(a) of title 8 of the United States Code, "[a]n alien may be arrested and detained pending a decision on whether the alien is to be

---

[28] *Id.*

[29] *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

[30] *Chen v. United States Dep't of Justice*, 434 F.3d 144, 153 n.5 (2d Cir. 2006) (quoting *Duamutef v. Immigration and Naturalization Servs.*, 386 F.3d 172, 181 (2d Cir. 2004); alterations in original).

8

removed from the United States." While the decision is pending, the Attorney General "may continue to detain the arrested alien and may release the alien" either on a bond or on conditional parole.[31] Under section 1226(e),

> [t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

### C. Due Process

The Due Process Clause of the Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."[32] The Due Process Clause protects aliens from arbitrary confinement regardless of their residency status.[33]

"'An elementary and fundamental requirement of due process in any

---

[31] 8 U.S.C. § 1226(a)(1), (2).

[32] *Zadvydas*, 533 U.S. at 690.

[33] *Id.* at 693 ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

9

proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[34] The opportunity to be heard must be "'granted at a meaningful time and in a meaningful manner.'"[35] "Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process."[36]

## IV. DISCUSSION

### A. Jurisdiction

Some arguments in Hamilton's Petition are directed at the weight the IJ assigned the evidence presented at the bond hearing.[37] Section 1226(e) specifically divests this Court of jurisdiction to review the decisions of the IJ and

---

[34] *Fuentes-Argueta v. Immigration and Naturalization Servs.*, 101 F.3d 867, 872 (2d Cir. 1996) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

[35] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

[36] *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149 (2d Cir. 2008) (quotation marks omitted).

[37] *See* Petition at 9, 11 (arguing that although the IJ had been presented with a copy of Hamilton's I-360, the IJ "did not take [Hamilton's] filing of a Form I-360 . . . into consideration").

10

the BIA (acting on behalf of the Attorney General) regarding detention of aliens under section 1226.[38] Additionally, the Court lacks jurisdiction to review the IJ's and the BIA's discretionary determinations.[39] Accordingly, this Court lacks jurisdiction over Hamilton's Petition to the extent it asks the Court to review the weight that the IJ or BIA assigned the evidence or any other discretionary determinations the IJ or BIA made, including the determination that Hamilton must be detained pending a decision on whether he should be removed.

However, some of Hamilton's arguments may go beyond merely challenging the IJ's or BIA's discretionary determinations.[40] Hamilton raises a procedural due process challenge to the sufficiency of the procedures afforded to

---

[38] *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003) (contrasting the federal courts' lack of jurisdiction over challenges to "discretionary judgments" and "decisions" made by the attorney general under section 1226, with the federal courts' jurisdiction over constitutional challenges to section 1226 itself).

[39] *See Sol v. Immigration and Naturalization Servs.*, 274 F.3d 648, 651 (2d Cir. 2001) (holding that federal courts lack jurisdiction over petitioner's section 2241 habeas petition because petitioner failed to raise a statutory or constitutional claim by only alleging that the decisions of the IJ and the BIA lacked adequte support in the record).

[40] *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.") (quotation marks omitted).

11

him in connection with his bond hearing before the IJ.[41] The Court has jurisdiction over this constitutional claim.[42]

## B. Hamilton's Procedural Due Process Claim

Hamilton alleges that his bond hearing failed to comply with his Fifth Amendment right to due process because the Government did not advise the IJ that Hamilton never received the USCIS Notices.[43] Although Hamilton states that he was "not given the opportunity to be heard" during the bond hearing,[44] Hamilton admits he had at least some opportunity to present evidence to the IJ.[45]

---

[41] *See* Petition at 9 ("In accordance with rights of procedural due process, the Petitioner should be given the opportunity to be present at a fair, open and honest hearing."); *id.* at 12-13 ("The Government violates Jason Owen Hamilton['s] rights under [the] substantive and procedural due process component[s] of the Fifth Amendment by not giving him . . . an opportunity to be heard.").

[42] *See Demore*, 538 U.S. at 516-17 (concluding that section 1226(e) does not deprive courts of habeas jurisdiction over constitutional challenges to section 1226).

[43] *See* Petition at 9 (arguing that the bond hearing was not "fair, open, and honest" becuase the Government "failed to tell the Immigration Court . . . that the USCIS failed to send out a [R]eceipt [N]otice for the Form I-485[,]" "failed to notify the [p]arties and attorney of record [Foy] of the scheduled [adjustment of status] interview[,]" and "did not disclose the fact that the USCIS never mailed . . . a copy of the written decision denying the I-130/I-485 applications").

[44] *Id.* at 13.

[45] *See id.* at 9 (stating that during the bond hearing Hamilton presented a copy of his Form I-360 Receipt Notice to the IJ and opposing counsel).

12

Furthermore, even if Hamilton was not allowed to present evidence of his alleged failure to receive the USCIS Notices to the IJ, the BIA's opinion clearly demonstrates that the BIA heard and rejected Hamilton's arguments regarding the USCIS Notices.[46] Because there is no indication that Hamilton was denied a meaningful opportunity to be heard during his bond hearing or on appeal to the BIA, and because there is no other indication of fundamental unfairness, Hamilton's procedural due process rights were not violated.[47]

### C. Hamilton's Requests for Damages and Attorneys' Fees

Hamilton requests an award of $100,000 in damages as well as attorneys' fees.[48] Insofar as Hamilton's requests raise claims under *Bivens v. Six*

---

[46] 7/17/09 BIA Decision, Ex. C to Opp. Mem. ("[Hamilton] argues on appeal that the DHS committed fraud by failing to notify him of an interview scheduled in relation to his 2004 application to adjust status . . . and of the subsequent denial of that application . . . . However, even if [Hamilton's] failure to attend his DHS interview is not considered as a negative factor, we still agree with the [IJ] that the record does not contain sufficient evidence of [Hamilton's] ties to the United States such that he has met his burden of showing that he is likely to appear for his future proceedings before the [IJ].").

[47] *See Xiao Ji Chen v. United States Dep't of Justice*, 434 F.3d 144, 155 (2d Cir. 2006) (concluding that no due process clause violation occurred when "[p]etitioner point[ed] to nothing in the record suggesting that she was denied a full and fair opportunity to present her claims; nor [did] she establish[] that the IJ or BIA otherwise deprived her of fundamental fairness").

[48] *See* Petition at 12-13.

13

*Unknown Named Agents of Federal Bureau of Narcotics*,[49] such claims are untenable under *Heck v. Humphrey*[50] and *Tavarez v. Reno*.[51] In *Heck*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, . . . a [section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[52]

In *Tavarez*, the Second Circuit extended Heck's holding to *Bivens* claims.[53] Here, Hamilton cannot recover damages because he fails to demonstrate that his detention has been invalidated as required by *Heck* and *Travarez*.

## V. CONCLUSION

For the foregoing reasons, Hamilton's Petition and Motion for Damages are denied. The Clerk of the Court is directed to close these motions

---

[49] *See* 403 U.S. 388 (1971). In *Bivens*, the Supreme Court held that plaintiffs could recover damages for constitutional violations committed by persons acting under the color of federal law. *See id.* at 395-97.

[50] *See* 512 U.S. 477 (1994).

[51] *See* 54 F.3d 109 (2d Cir. 1995).

[52] *Heck*, 512 U.S. at 486-87 (footnote omitted).

[53] *See* 54 F.3d at 110.

14

(Docket Nos. 1 and 2) and this case (09 Civ. 6869).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
December 30, 2009

## - Appearances -

**Petitioner (Pro Se):**

Jason Owen Hamilton
# 200901594
Orange County Jail
110 Wells Farm Road
Goshen, New York 10924
(347) 659-5118

**For Respondents:**

Shane Patrick Cargo
Assistant United States Attorney
U.S. Attorney's Office
Southern District of New York
86 Chambers Street
New York, New York 10007
(212) 637-2711